V. National Institute of Family and Life at all? Good morning, Mr. Hitsos. Hitsos, Your Honor. Good morning, Your Honors. You have three minutes reserved for rebuttal and you can begin whenever you're ready. Thank you, Your Honor. Beginning with the younger issue, we understand that non-party abstention is rare in the law, but the rare circumstances present to have that relief are satisfied here. First and foremost, the NIFLA plaintiffs are raising claims that are derived entirely from the rights of the state court defendants, the HBI defendants, because we never sued them based on their current conduct, them being the NIFLA plaintiffs. But that's true in the Supreme Court cases that they cite. Duran and Stafel, it's the exact same situation we have here where someone gets arrested, and Duran was the bar owner, Stafel was hand-billing. Others were not arrested and sued in federal court and Supreme Court twice. So even though they're bringing simultaneous constitutional challenges, the fact that there's a state court proceeding, an enforcement proceeding in that case, in both of those cases, criminal, doesn't qualify for younger abstention. So how is that different from here? What's different here, Your Honor, is that the federal plaintiffs in those cases faced imminent enforcement independently. They had been engaged in the hand-billing in the case of Stafel. We have that here in Paragraph 209 of the complaint. Gianna's house said they removed their references to the treatment as a result of the enforcement. I'm not sure that even matters because that goes to standing. The fact that they used the state case to establish that they have standing, it's an imminent threat, doesn't mean that it's derivative. That doesn't make any sense to me. That's really what you said in your reply brief, right? You're saying because their federal case needs the state case to show an imminent threat of enforcement, that somehow it's derivative, but that's not derivative. Your Honor, it's more than standing here. It's that they have pleaded themselves into the shoes of the HBI defendants. The only way that the district court can decide the merits of this case is to look at the merits of the HBI case in state court. There is no NIFLA speech. There is only the NIFLA plaintiff's proposed speech, which is synonymous with the HBI defendant's speech. I just read to you the part of the complaint where they said we had this speech up, we were promoting this speech, and we took it down. Your Honor, that wasn't their basis for standing. Their basis for standing because we didn't sue them necessarily has to be that they want to engage in the HBI speech. They hadn't been engaged in that speech, otherwise we would have named them as defendants in the state court action. Yeah, I mean that does, I think you're conflating standing, because that sounds like an argument which you're not raising here, you're not pursuing here, that they don't have standing. We're not raising standing only with the understanding that their basis for the injury is that they want to engage in the HBI defendant's speech. If they're saying that anything they're currently doing raises a threat of enforcement, we reserve the right to dismiss for lack of standing because we established below we were never going to sue them based on their current speech. So that's why standing and younger are distinct here. They have standing based on their intended speech, which is to chill, which would be chilled because they want to engage in the HBI defendant's speech. However, because of that theory, the only way that the district court can decide whether that speech is protected is to look at the record. In fact, the NIFLA plaintiffs at points are asking the district court, in some cases quite literally, to review the complaint that we filed against the HBI defendants and to look at those allegations, decide that they're either unsupported or without merit. Can I just ask one more on younger? Will you be precluded in the state court proceeding by a judgment here? We do not believe that we would be precluded, but we believe that there would be interference insofar as a preclusion argument would not just be a possibility, it would be inevitable. And that issue, I will note, non-mutual collateral estoppel remains an open issue in New York. For the state? For the state. And we would argue that we're not precluded, but it's inevitable that if there is a final judgment here... Why is that open? That's open because it hasn't been dealt with by the Court of Appeals yet. It has been dealt with in the Appellate Division, but the Court of Appeals has not resolved it yet. So the fact that... Aren't there numerous circuit cases that say just because there's going to be some race judicata effect of the federal holding, that's not sufficient for younger abstention? I could cite the cases to you, but it's a pretty well-established rule that that's not enough. There are equally cases saying that declaratory judgments can be subject to younger because of the reclusive effect. If it's the same parties that are involved, that's when it's either derivative or it's the same parties, then I understand that. But we're talking about a non-party who's enforcing their own First Amendment rights or trying to enforce their own First Amendment rights, and the fact that the holding here could affect the state court litigation or even preclude this race judicata-wise, the state court litigation, is not enough. Otherwise, everybody would be hostage to one person who's subject to an enforcement action in a state proceeding. Nobody else could try to vindicate their own First Amendment rights, Second Amendment rights. You named the amendment simply because there's a state proceeding enforcing it against one person. Well, in most of those cases, the party would have an independent right. However, if this court is disinclined to accept younger, the district court still abuses discretion in granting the preliminary injunction with respect to the merits. The preliminary injunction flows from the finding that this speech was non-commercial and thus entitled to maximum First Amendment protection. And that, in turn, was the product of the application of the three factors first enunciated in Bulger. It really turns here on the third factor, economic motivation. The district court reasons that the NIFLA plaintiffs were not looking to make money. They were looking to promote their religious and moral convictions. Now, at this early stage of the proceedings, we can accept that. But it doesn't get the NIFLA plaintiffs across the finish line. And the reason for that is that this is a free speech case. The primary focus in a free speech case has to be on the speech and the context in which the speech is made. Put another way, what are the NIFLA plaintiffs intending to say? And how would a reasonable recipient understand what they're trying to say? And on that question, we have a record here because we have our state court complaint that has a lengthy description of the ads that we sought to target in the state court action, including samples of those ads. And I believe it's pages five. Let me ask you this. And you concede for purposes of the motion that they have, their motivation is moral, religious, not economic. You concede that for purpose of the motion, correct? Yes. All right. And they're not offering any type of services product themselves. Let's assume that the treatment, the APR treatment would be considered a service or product, whatever you want to call it. They're not offering that themselves. All they're doing is putting out information and telling people, if you want to learn, if you want to consider this, if you want to learn more about this, here's the website that you should consult. So you're suggesting that that is commercial speech, even though they're offering no product or service themselves. They're just putting out information and referring them to others who may be offering that. So, Your Honor, I disagree with the premise that they are not offering the product. And that goes to how would the reasonable recipient of this speech construe it. They allege in their complaint they're not offering any treatment. They allege that in their complaint, but we need not accept that as true. This is an emotion to dismiss. What information is in the record that they offer APR treatment themselves, that Gianna's House, for example, is offering APR treatment? There's no evidence of that. They don't employ individuals who use APR treatment. However, if you look at the advertisements, they use terms like we're here to help you, we're here to assist you, or at least that's how they would intend to advertise, based on the reference to the state court action. And by linking to this website, by linking to the phone number, they are holding themselves out as a conduit through whom you obtain APR. Any time a non-profit organization believes in certain issues, be it political, religious issues, and they put out information and they refer the reader to others who are providing services of some type related to that, you would say that we should hold that it's commercial speech? Is that what you're asking us to do? Not at all, Your Honor. In many of those cases, the reasonable recipient would look at that advertisement and they would understand that it's just the expression of an opinion. But here we have several indicators. For one, they are not standing on a soapbox. They're not communicating to the broader public their views on APR. Do you think the result is different if they say we're against abortion morally and religiously, and then that's the headline, and then it has all the same information that they had? Do you think the analysis should be different because they put their motivation in the ad? Your Honor, I would say— There's no fakesaw that suggests that that makes the difference, right? Your Honor, I would say that that goes into the mix. It might make this closer to the advocacy of beliefs, but it wouldn't necessarily drive the result. Let me give you some hypotheticals. You tell me whether you think this would be commercial speech or non-commercial speech. The ACLU wants to run an ad in a city that has a lot of police misconduct, and the ad says, if you've been the victim of police misconduct, you have rights and links to a bar association that provides pro bono legal services for people who may want to pursue that. Is that commercial speech or not? On the whole, that sounds like it would not be commercial speech. The reason why being that in the context of that ad, the link is to the bar association. The user, the consumer, would understand that they're just referring to the bar association. It's not being held out as their network of physicians, or—well, here it's a network of physicians. It wouldn't be held out as their network of attorneys. Where are these being held out as their network of physicians? I didn't see that. Well, part of the alleged deception, Your Honor, is by linking to abortionpillreversal.com without indicating that this is a website maintained by a different organization. It certainly isn't hbi.com. They're not referring to any different organization. How about a reproductive rights group that's non-profit, strict abortion regulations in one state, and they run an ad saying, if you want to have an abortion, you can't pay for it. Here are entities that will help you pay your travel expenses to go to a neighboring state. They're not offering any types of reproductive services. They just want people to know that if they want to pursue an abortion, there are organizations out there that will help them do that. Is that commercial or non-commercial? The way it's described in the hypothetical, Your Honor, it seems like it would lean toward non-commercial because, once again, this organization is not holding it out as the avenue through whom you obtain it. And that's an important part of our case, Your Honor. When you have these advertisements, which you can consult in the record, when you have this link to the website bereft of any kind of context mixed with words like, we are here to help you, the consumer comes away with the impression that these organizations, the NIFLA plaintiffs, are the vehicle through whom you obtain abortion pill reversal. And it's important to think from the view of the average consumer. I think we would be breaking a lot of new legal ground here. I didn't see any case in the history of the United States where a court has made this type of holding with respect to a non-profit organization that's offering no services or products themselves and just putting out information. Which case has done that? I can't find any. The cases that we have cited were Greater Baltimore from the Fourth Circuit, First Resort from the Ninth Circuit, and Fargo out of the North Dakota Supreme Court. In all of those cases, there was a defense raised, we're just doing this for non-profit purposes. The Fargo case, they were, there was an issue whether or not they were getting financial benefits from it. They talked about, you know, credit cards and things like that. But ultimately, in that case, they were providing the services themselves. And the North Dakota Supreme Court said, they are soliciting services for their own organization. So that's a big difference, right? But the analysis employed by the North Dakota Supreme Court was, look at the speech. What are they offering? And the North Dakota Supreme Court ultimately concluded, they're not offering an exchange of ideas. They are offering the service in and of itself. And that's what we have here. The NIFLA plaintiff's proposed advertising isn't going to induce consumers to engage in a dialogue about family planning. They are inducing consumers to come in, make contact with them, and through that contact, that is how they are going to obtain abortion pill reversal. Even in the standard kind of drug ad, there's usually that phrase at the end, talk to your doctor about this drug, that drug. The impression created here is, talk to our doctors. We have doctors at the ready who will be willing to provide you with abortion pill reversal. That's the impression that's created by this speech. And that's among the reasons why we say it's commercial. In addition, another part of this context is that even though the NIFLA plaintiffs are reporting that they're advancing a mission in their litigation papers, if you look at the ads themselves, the inducement language is entirely non-judgmental. The grounds that they're inducing consumers to come in, make contact with them, and obtain abortion pill reversals, that it's safe and effective. They're not saying, if you've taken methapristone, you've committed a sin, and now it's your opportunity to make things right. That would be the expression of a belief, perhaps. They're saying it's safe and effective, which mirrors what the average kind of drug ad looks like. Could I just ask, the District of California case that you cite in your reply, am I right that that's making a different argument than the argument you're making now? That's kind of understanding the overall ecosystem here as involving some economic interest to the plaintiffs. Do you understand it that way? We understand that the reasoning there is twofold. The district court in that case reasoned that there had been some evidence of economic interest as to NIFLA. This court can certainly take judicial notice of that as applied here. But are you making that, did you make that argument below? That record, that's a different record in this case. We didn't make that argument below. But the district court also reasons that just because they're disclaiming economic interest, it wouldn't be dispositive. And that's ultimately our argument, that economic interest or disclaimer thereof isn't dispositive. You have to look at the speech. Well, there's a difference between whether disclaimer of economic interest is dispositive or economic interest is dispositive, isn't there? That's a fair point, your honor. But there are cases that say that lacking an economic interest is not dispositive if the speech on the whole is communicating that we're proposing a commercial transaction. And I emphasize that when we're looking at it from the vantage point of the consumer, here the consumer is a woman who has experienced an unplanned pregnancy by and large. They're not concerned with whether or not this organization is actually employing the doctors who are going to be furnishing abortion pill reversal. What they're looking for is medical treatment. They're Googling unplanned pregnancy. They're Googling terms like abortion. And agencies like the NIFLA plaintiffs are who comes up in those Google hits. They hold themselves out as vessels through whom these individuals can obtain medical services, whether they're providing them directly or indirectly. I gave you a few examples. You could have immigration services, non-profit entities that refer people out for services. You could have environmental groups that do those things. It would apply to every category, what you're suggesting. But I think we have the argument and you have three minutes from rebuttal. Thanks. Thank you. Ms. Lindsey? Good morning, Your Honors. Caroline Lindsey on behalf of Appel Ease. May it please the Court. The Attorney General has not cleared the high bar she faces in this appeal. As Your Honors discussed, a straightforward application of the Supreme Court's precedents makes clear that the Younger Doctrine does not apply. And she does not attempt to satisfy strict or even intermediate scrutiny. So she can only prevail if my client's faith-driven advocacy reflecting opinions on one side of an ongoing scientific debate is both commercial speech and inherently misleading. It is neither. First, my client's religiously motivated speech encouraging women to consult with third-party physicians about a free, potentially life-saving medical treatment neither proposes a commercial transaction nor has any economic motivation whatsoever, a point that was conceded by the Attorney General below and again today before this Court. Notably, she does not identify any Court that has ever found speech to be commercial when the undisputed record evidence shows a complete lack of economic motivation as it does here. But it can't be that as long as there's no economic motivation, it could never qualify as commercial speech. There are cases that say that's not enough, right? Simply a lack of an economic motivation. You would agree with that, right? No, Your Honor. The Attorney General has identified three out-of-circuit cases that in dicta have opined that economic motivation. So you think anytime there's a lack of economic motivation, it by definition can't be commercial speech in every situation? Is that your position? Yes, Your Honor. The core of the commercial speech doctrine is that it does no more than propose a commercial transaction. So if you have doctors who are providing this treatment, who are making all sorts of misrepresentations about it in their ads, but they were doing it for free, the doctors themselves could not be subject to any regulation or enforcement for putting out, let's just assume, blatantly false medical or scientific information simply because they were doing it for free? Those doctors absolutely could be subjected to regulation and are under a whole host of regulatory regimes that control medical speech. They're not motivated by economic interest, they're not charging anybody, right? Sure, they would not be necessarily subjected to an action under this New York business fraud statute, but there would be potentially, in that hypothetical, if it was blatantly fraudulent, then perhaps it would come under that under the different exception to the First Amendment for fraudulent speech. But the Attorney General does not allege fraud here. She alleges that this is commercial speech that is unprotected because it is misleading. But if in that hypo, if there were a pre-enforcement civil action brought by the doctors, is the argument that that would not be commercial speech but still could be subject to restriction because of fraud? Yes, Your Honor, that's what the Attorney General would be able to pursue here. And that's just under... I'm saying if the doctors brought an action parallel to your action here, arguing that restrictions on their speech that they say is true, is non-commercial speech protected by the First Amendment? It would be protected fully by the First Amendment. It would not be protected speech under the fraud exception, so that would just be a different exception. Could it be analyzed as non-commercial speech? Science commercial speech? Under the Supreme Court's decision in Central Hudson and this court's decision in Koronia, we do think that an economic motivation is the core of commercial speech. But even if this court... this court does not have to say that to affirm the District Court's preliminary injunction below. Because here, it is undisputed that there is no economic motivation. Does it matter whether or not the people, the entities that you're being referred to, are charging or not charging? If you saw in the reply papers, they indicate, and I think they're correct, that the record is unclear as to whether or not the providers who perform, who provide the actual treatment, will do it for free or not. It says things like will help for financing and things like that. Does that matter in the analysis or not? No, it does not because the question is whether or not the speaker has any economic motivation and it is undisputed that my clients do not receive any remuneration at any point. So the fact that even if it is, if the Attorney General... He's suggesting that there might be some connection, some arrangement where they're being put out as your clients are saying these are our medical providers or the absence of that distance in the Ed, he said, matters. Does it matter? Whether or not they were some linkage between the website abortionreversalpill.com and the entities that actually provide the treatment and your clients, if there's some connection that that could change the analysis even though your clients are motivated by money? Yeah, it would not change the analysis because the test is not who's providing the services. The test is whether the speaker has an economic motivation and there is no economic motivation here. Even if this court were to break new ground and be the first to hold that in the absence of economic motivation, there could be commercial speech. There still shouldn't be found any here because there's no specific product reference either and that's seen through a straightforward application of Bolger. In footnote 13, the court actually gives an example of what is a specific product reference versus a general product reference. In that case, there were informational pamphlets that gave information about family planning and contraceptives. Footnote 14 goes on to say that just because one of the factors is missing isn't dispositive. That's true. It does not say, however, that economic motivation is disposable. You read that to mean other than economic interest. Well, the court actually gives the example of specific product reference being disposable because in footnote 13, it notes that there are two narrow circumstances where the type of generic reference that we arguably make here, if we make any reference at all to a product, only speaks to commercial speech in two circumstances, either when the speaker controls the market so much so that everyone knows that they're talking about their brand when they just mention condoms. So for example... So you don't think APR can be considered the product in this case? They would say APR is the product. Yeah, we do not think it's a product. It's a general method of medical treatment that involves the product that's at issue is the actual progesterone drug, which takes many different forms. They cite cases that say medical services constitute product for purposes of the First Amendment. Yes, Your Honor. So I would say there's two kinds of types of products that are involved in abortion pro reversal, the progesterone, the medicine, but also the services that are provided by a specific doctor. The case is cited by my friend, I think you probably have in mind, American Academy of Pain Management from the Ninth Circuit. Those involve advertisements on specific doctors' websites about their practice and their services for surgery. It did not involve speech about orthopedic surgery generally, about the virtues of knee replacement surgery. It was about come to my office and receive orthopedic surgery from me. Suppose your client was referring to a particular doctor. Did that change the analysis? It was not generic, but a particular doctor? In the speech itself? Yeah. That would be closer to the line of a specific product reference, but that's not what we have here. In fact, some of the speech that comes under the preliminary injunction doesn't even cite to the abortionproreversal.com website or to the hotline itself, and some of the speech that was covered just simply discusses the option of abortion pro reversal and would just do no more, as the district court found, than encourage a woman to talk to her doctor about this option. That was a factual finding of this court, and the Attorney General has not proven that was clearly erroneous, that that is the import of the speech there. NIFLA received fees from the centers in exchange for advising, receive, I guess I'll just ask it more generally, is there anything in the record that would suggest that NIFLA receives fees from the pregnancy centers? There's nothing in the record, as we've discussed. The Attorney General conceded below that there was no economic benefit, let alone an economic motivation here, and we didn't affirmatively include such information in our legal analysis here. Incidental economic benefits are not enough, even under the Ninth Circuit's case law, which is probably the one that goes the furthest under the commercial speech doctrine here with first resort, and it's other decisions like Eric's make clear that it has to be the primary motivation for the speech, so it can't just be some incidental benefit. It has to be the reason the speaker is engaging in the speech, and I think everybody here agrees that the reason my client's engaged in the speech is not to benefit economically one way or another, but rather to help women in need. But if there were economic, so you're saying even if there is economic benefit derived by your client from the referrals, that that would be insufficient to move this to commercial speech? Yes, and for the additional reason in this case, that the NIFLA's speech to its members, they actually argued below, and you can see that at the hearing in the transcript on pages 981 to 82 of the joint appendix, they actually take the position that that kind of speech is not commercial. So I think all the parties agree that NIFLA's speech to its members is non-commercial, and so therefore any benefit derived from that specific speech has no bearing on the speech that's directed to consumers, or on the speech uttered by Options Care Center and Gianna's house, because that's actually, if there are membership fees collected, that actually is a cost to them, not a benefit. So we would still have to adjudicate those claims. Can you just, Judge Nathan mentioned the California case Monta. Can you just address that, whether you think that's distinguishable or wrong? How would you address that case? Yes, it's readily distinguishable, first and foremost for the reason Judge Nathan identified, which is that in this case there is no dispute that the record evidence points one way, a lack of economic motivation. That was a factual finding by the district court that the, I don't take the Attorney General to even be challenging, but if she were, she does no evidence to prove that that was clearly erroneous. In that case, there's a very different record that has been developed, but even setting that aside, we do think that the conclusion the court reached in that case is wrong, and we're optimistic that under the Ninth Circuit precedent, hopefully to be applied on appeal, it will be reversed. But this court doesn't have to weigh in on the merits of that decision, because it's a completely different case with a completely different record. Can I just ask you, and I'm interested in Judge Nathan's question about whether or not economic benefit, if there were economic benefit, that that, to your mind, could not overcome the absence of an economic motivation? And I think when you were talking about it, I think you may have used the term incidental economic benefit. What if the economic benefit were not incidental, and in fact it were a direct, you get this amount of fee for each referral that comes through this website or what have you, your view is that even if there is direct and not insignificant economic benefit, as long as the primary motivation is not economic, that it still is not commercial speech, even if you were getting, let's say, some kind of referral fee for each person who went to this website? So yes, even under the Ninth Circuit's case law, it has to be the primary motivation. So in this case, nobody disputes that there's actually no economic motivation, and there's clearly a non-economic motivation that's the primary motivation here. But even in a case where there would be an economic motivation, when it's mixed speech, that it has an ulterior motive that has nothing to do with the economic benefit, if the record shows that that was the primary motivation, under even the Ninth Circuit's case law, which is much more generous to restriction of commercial speech than this court's case law, even they acknowledge that it has to be the primary motivation, not just a motivation. And so here, this case is very easy for this court, even under the Ninth Circuit's precedent, if it wanted to apply out-of-circuit precedent here, because there's no economic motivation. So you don't even need to, you know, reiterate. If you're not sure you agree with that decision of Eric's in the Ninth Circuit, you don't even have to go there, because everyone agrees there's no economic motivation. Again, this court would be the first to find commercial speech on a record like this, where everyone agrees that the evidence demonstrates a lack of an economic motivation here. Right. Tiffany? I'm sorry, could I take you out of order and just ask on Younger? I understand there's cases related to the impact, potential impact of res judicata, but just as I think about the state's argument as to interference with its enforcement proceeding, do you understand the defendants in that enforcement proceeding to be able to argue a preclusive effect of a judgment here? I do not. I haven't looked into the merits of a preclusive argument that they would have in that case. Our position is that even if there were a meritorious preclusion argument... You haven't considered that? I find that a little surprising, but... Well, even if there were, because it's irrelevant to our case in the sense that even if there were, let's say we all agreed there was a slam-dunk preclusion argument, that's not enough into the Supreme Court's Younger doctrine. And a quote that we have in our brief from New Orleans, a public service information services versus the City Council of New Orleans, makes very clear that even when it, for all intents and purposes, practically preempts the state court proceeding, that still is not enough unless it actually directly interferes. Every case cited by the Attorney General actually involves a requested relief that would directly enjoin the state proceeding. She has pointed to no case where this type of indirect... You pointed out there are declaratory judgment cases, right? Even though it's not an injunction... Yes, I'm sorry. When there's a third party federal claimant, all of those cases, the requested relief actually would enjoin the state court proceeding. Declaratory relief is enough, the court said in Duran, when the parties are the same. So that discussion in Duran was actually when it was talking about if the parties had been overlapping. All right, thank you. Thank you, Your Honors. The NIFLA plaintiffs elucidate in detail about their subjective motivations, but they haven't told you anything about the context of the speech itself, and that's the difference between the two of us. For instance, the NIFLA plaintiffs argued to this court that they would provide the services for free. But if you look at the ads, as Judge Bianco points out, there are references in the ads to cost and talking to your insurer. There's nothing about free. In fact, the site says, if you can't pay or your insurance won't pay, come and talk to us. Maybe we can reduce the cost. Why isn't NIFLA for the purposes of protecting First Amendment rights to the extent there's false information out there, the focus to be on the doctors who might be providing the false information and regulate them as opposed to regulating nonprofit organizations who are religiously motivated, who are speaking about an issue they feel strongly about? Why couldn't the regulation take place with respect to the doctors who are providing the treatment? So, Your Honor, there are regulations with respect to doctors and their patient relationships, and we argue that if a doctor were to engage in these same kind of advertisements, then absolutely we could go after the doctors for deceptive and misleading speech. So why would the Attorney General then focus on these nonprofit groups that have no economic motive, are not making any money, and do it because they believe it's morally wrong? Why would the focus be on them? Should we let them have the chance to speak what they believe is right and what they think women should consider? And to the extent there's scientific or other medical falsities out there with respect to this, the doctors could be held potentially responsible for that, right? Well, Your Honor, that brings up an important point, which is that I need to emphasize we are not trying to ban the NIFLA plaintiffs from expressing their beliefs. This goes to the question of inextricably intertwined. The Supreme Court asks the lower courts to inquire, can you express your beliefs without soliciting business? And we know because we investigated similarly situated organizations throughout the state, we only wound up taking a civil enforcement action against 12 of those, largely because the rest of them are capable of expressing their beliefs without soliciting business. And certainly the NIFLA plaintiffs are capable of expressing their support for abortion pill reversal, but when they want to go one step further, when they want to hold themselves out to consumers, target it at consumers, and give them the impression we are the avenue through whom you get that. Earlier, just to make sure I understand where you think the line is, if they had an ad that said we believe abortion is immoral, and any woman who's undergoing an abortion procedure with the pill should consider reversal of that, and they put in the website for abortionreversalpill.com. Is that commercial speech or not? That doesn't sound like commercial speech because now they're not saying we can help you. They're not creating the message that we can get this for you. So the key thing is whether they say we can help you, here's the website. That's the difference? That's the First Amendment difference? Your Honor, part of the difficulty of this is that I'm not sure there's any one single factor that's decisive. It's really kind of a totality of the circumstances kind of framework. So in this situation, what points to this speech being non-commercial is that A, you have the expression now of moral beliefs, and B, you are not referring or you're not holding yourself out as a conduit. So if I could respond with a real life situation where we didn't take enforcement action, there are similarly situated organizations that have blog posts that simply talk about abortion pill reversal and its merits, but they don't have those references. They don't say we can help you. There are other organizations that have testimonials. They have something that says abortion pill reversal, and then somebody testifying that they experienced it and had successful results. We did not target that because in context, on the whole, we did not understand that speech to be soliciting business. The only speech that we're targeting here is speech that solicits business. That sounds like a pretty unclear First Amendment line to me that you're articulating there, where it would hinge on very minor differences in the ads. So I think it would be a very difficult thing for a court to articulate. So, Your Honor, we're not arguing for something that's like, I know it as when I see it. We're not. Here we have five indicia of commercial character. One is the targeted nature. Two is the fact that they are inviting people to come in for the service. Three is that they are holding themselves out as the custodian of the service. Four is that they are not using any terms that refer to their mission. And five is that they actually refer to costs and don't say anything about free. And when you have those five coalescing factors, you can be guided by them and say that the overall impression that the reasonable consumer would draw is that this speech is commercial. And ultimately, that is the test that we're asking this court to adopt. When we say that context matters, we're asking you to look at what are they trying to say and how would the consumer understand it. And if the consumer is understanding this as just the expression of ideas, it's not commercial and vice versa. Can I ask if I think that some kind of economic interest or motivation is necessary for a determination of commercial speech, but I'm open to a broad understanding of what economic interest means, is there any argument you can make on this record? On this record, it would not, well yes, actually on this record, if we are assuming that the NIFLA plaintiffs are pleading themselves into the shoes of the HBI defendants, it is evident that many of the HBI defendants are in fact either employing doctors or they have doctors who have formal affiliations with them. And so that's not hashed out completely on this record, but we certainly can't say for sure that the NIFLA plaintiffs are just sort of standalone organizations and that there is distance between themselves and these doctors. Can't say for sure, but well I guess did you make any argument along those lines below for purposes of the preliminary injunction? For purposes of the Was not dispositive. Did you non-primarily make the argument that you're suggesting now? Not that I'm aware, your honor. All right, thank you. Thank you both for a reserved decision. Have a good day.